# GENESIS

**GENESIS INSURANCE COMPANY**
**STAMFORD, CONNECTICUT 06904**

## THE PUBLIC POLICY®

THIS POLICY JACKET WITH THE COMMON DECLARATIONS PAGE, COVERAGE PARTS, AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THIS POLICY.

GIC-12-8J

Exhibit A

**Genesis Insurance Company**
P.O. Box 10352, Stamford, Connecticut  06904-2352
(203) 328-6660

## THE PUBLIC POLICY - RETAINED LIMIT FORM
### Declarations Page

Policy No. YXB300859

### Item 1. General Information

First Named Insured:             City of Council Bluffs
Mailing Address:                 209 Pearl Street
                                 Council Bluffs, Iowa  51503

Named Insured(s):

Policy Period - Coverage Parts A and B - both dates as 12:01 a.m. Std. time at your mailing address

From:  January 1, 2002            To: January 1, 2003
Retroactive Date: July 1, 1988            (applies only to Coverage Part B)

### PART B IS A CLAIMS-MADE COVERAGE PART - PLEASE READ IT CAREFULLY

### Item 2. Schedule of Retained Limit(s)

| | | |
|---|---|---|
| Coverage Part A | $  250,000 | applies to each **occurrence** as defined by the Public Liability Coverage Part |
| Coverage Part B | $  250,000 | applies to each **claim** as defined by the Public Officials Liability Coverage Part |

### Item 3. Limit(s) of Insurance

| | | |
|---|---|---|
| Coverage Part A | $19,500,000 | Coverage Part Aggregate Limit |
| | $ 9,750,000 | Each **occurrence** as defined by the Public Liability Coverage Part |
| Coverage Part B | $ 9,750,000 | Coverage Part Aggregate Limit |
| | $ 9,750,000 | Each **claim** as defined by the Public Officials Liability Coverage Part |

### Item 4. Premium

| | | |
|---|---|---|
| Coverage Part A | $  237,375 | Flat Premium, Adjustable at Rate of $Not Applicable per _____ of _____, Subject to Minimum premium of $_____ |
| Coverage Part B | $  22,000 | Flat Premium, Adjustable at Rate of $Not Applicable per _____ of _____, Subject to Minimum premium of $_____ |

Forms and Endorsements comprising this policy: See Endorsement No. 1 _____

Signed at Stamford, Connecticut, this 14th day of February, 2002

_Scott Pennel_

PEPRLF-D-POL-CM (02/01)                      Authorized Representative

Copyright, Genesis Insurance Company, 2001

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## POLICY CHANGES

Endorsement
Number ___1___

| POLICY NUMBER | ENDORSEMENT EFFECTIVE | COMPANY |
|---|---|---|
| YXB300859 | January 1, 2002 | Genesis Insurance Company |
| NAMED INSURED | | COVERAGE PARTS AFFECTED |
| City of Council Bluffs | | Public Entity Policy<br>Retained Limit Form<br>Coverage Parts A and B<br>Common Policy Conditions |

## CHANGES

### SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| PEPRLF-A (02/01) | Coverage Part A Public Entity Liability |
| PEPRLF-B-POL-CM (02/01) | Coverage Part B Public Officials Liability - Claims Made Coverage |
| PEPRLF-C (02/01) | Common Policy Conditions |
| PEPRLF-5 (02/01) | Incidental Medical Malpractice Liability Exclusion |
| PEPRLF-6-II (02/01) | Claims Expenses Erode Retained Limit and Limit(s) of Insurance |
| PEPRLF-12 (02/01) | Employers Liability Exclusion |
| PEPRLF-15 (02/01) | Iowa Statutory Damages Cap Endorsement |
| PEPRLF-17 (02/01) | Exclusion – Existence or Maintenance of Dams, Dikes, or Levees |
| PEPRLF-36 (02/01) | Limited Pollution Liability Coverage for Public Entities |
| PEPRLF-NUCLEAR (02/01) | Nuclear Energy Liability Exclusion |

Signed at Stamford, Connecticut on February 25, 2002

*Scott Pennell*

_____
Authorized Representative

Copyright, Genesis Insurance Company, 2002

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Endorsement
Number  2

| POLICY NUMBER | ENDORSEMENT EFFECTIVE | COMPANY |
|---|---|---|
| YXB300859 | January 1, 2002 | Genesis Insurance Company |
| NAMED INSURED | | COVERAGE PARTS AFFECTED |
| City of Council Bluffs | | The Public Policy Retained Limit Form Coverage Part A |

### CHANGES

#### INCIDENTAL MEDICAL MALPRACTICE LIABILITY EXCLUSION

A.   **SECTION I – COVERAGE, C. Exclusions** of the **PUBLIC LIABILITY COVERAGE** is amended to include the following:

(This insurance does not apply to:)

1.   **Bodily injury** or **personal injury** arising out of the rendering of or failure to render medical or premedical services to persons:

    a.   By any physician, dentist, nurse, emergency technician, first aid attendant or paramedic who is employed by **you** to provide such services;

    b.   By any police officer, firefighter or employee specifically trained and certified by **you** or by a licensed outside organization to provide such services; or

    c.   By any third party emergency technician, first aid attendant or paramedic providing services to **you** under a mutual aid agreement.

B.   **SECTION IV - DEFINITIONS** paragraph **D.** is deleted and replaced with the following:

**Bodily injury** means bodily injury, sickness, disease, shock, fright, mental injury or anguish, emotional distress or disability sustained by a natural person, including death resulting from any of these at any time.

C.   The following is added to **SECTION II - WHO IS AN INSURED:**

However, no employee or volunteer is an **Insured** for **bodily injury** or **personal injury** arising out of his or her providing or failing to provide professional healthcare services.

Signed at Stamford, Connecticut on February 25, 2002

*Scott Pennell*

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Endorsement
Number _3___

| POLICY NUMBER | ENDORSEMENT EFFECTIVE | COMPANY |
|---|---|---|
| YXB300859 | January 1, 2002 | Genesis Insurance Company |
| NAMED INSURED | | COVERAGE PARTS AFFECTED |
| City of Council Bluffs | | The Public Policy<br>Retained Limit Form<br>Coverage Part A |

### CHANGES

### <u>CLAIM EXPENSES ERODE RETAINED LIMIT<br>AND LIMIT(S) OF INSURANCE</u>

**SECTION I – COVERAGE, B. Defense** is deleted and replaced with the following:

**B.    Defense**

We have no duty to defend any claim or **suit** but we shall have the right and **you** shall give **us** the opportunity to associate in the defense of any claim or **suit** against the Insured seeking damages for **bodily injury, personal injury, advertising injury,** or **property damage,** which, in **our** sole opinion, may create indemnification obligations for **us** under this Coverage Part. In addition:

1.    The **Insured**, or the **Named Insured** on the **Insured's** behalf, has the duty to defend any claim or **suit** seeking damages to which this insurance applies and shall be responsible for any **claim expenses.** The **claim expenses** incurred by the **Insured** serve to erode this Coverage Part's **retained limit.**

2.    When the **Insured's** legal obligation to pay **ultimate net loss** to which this insurance applies has been determined, and this amount is greater than the **retained limit,** then and only then will the **Insured** be entitled to make claim for indemnity under this Coverage Part. The **Insured** shall make such claim for indemnification as soon as practicable after it has paid the **retained limit.** We shall then indemnify the **Insured** for the amount of such **ultimate net loss** in excess of the **retained limit** subject to the Coverage Part's relevant **Limit(s) of Insurance** set forth in the **Declarations Page** or in any endorsement.

3.    The **Insured** must obtain **our** prior written consent before offering or agreeing to pay an amount which exceeds the **retained limit** in order to settle any claim or **suit** seeking damages to which this insurance applies either in whole or in part.

4.   We shall also have the right, but not the duty, to assume control in the defense of any claim or **suit** which, in **our** sole opinion, may create indemnification obligations for **us** under this Coverage Part. This assumption of control shall include, but not be limited to:

   a.   The investigation of any **occurrence, offense,** claim or **suit;**

   b.   The selection or retention of defense counsel;

   c.   The appeal of any judgment; or

   d.   The settlement of any claim or **suit.**

If we exercise **our** rights specified in this paragraph, we shall pay the related claim expenses.

**SECTION IV – DEFINITIONS**, paragraph **Y. Ultimate net loss** is deleted and replaced by the following:

Y.   **Ultimate net loss** means the total amount of damages, including any punitive or exemplary damages when not against public policy and attorney fees awarded in favor of third parties, the **Insured** is legally liable to pay because of **bodily injury, personal injury, advertising injury,** or **property damage. Ultimate net loss** also includes related **claim expenses. Ultimate net loss** shall be established after a contested **suit** or by a compromise settlement to which we have previously agreed in writing. **Ultimate net loss** shall be reduced by any recoveries or salvages which have been paid to or collected by **us.**

Signed at Stamford, Connecticut on February 25, 2002

**PEPRLF-6-II (02/01)**

Copyright, Genesis Insurance Company, 2001

Authorized Representative

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Endorsement
Number 4

| POLICY NUMBER | ENDORSEMENT EFFECTIVE | COMPANY |
|---|---|---|
| YXB300859 | January 1, 2002 | Genesis Insurance Company |
| NAMED INSURED | | COVERAGE PARTS AFFECTED |
| City of Council Bluffs | | The Public Policy<br>Retained Limit Form<br>Coverage Part A |

## CHANGES

### EMPLOYERS LIABILITY EXCLUSION

A.  The following is added to **SECTION I – COVERAGE, C. Exclusions** of the **PUBLIC LIABILITY COVERAGE:**

   1.  **Bodily injury** or **personal injury** to:

      a.  An employee of the **Insured** arising out of and in the course of employment by the Insured; or

      b.  The spouse, child, parent, brother or sister of that employee as a consequence of paragraph a. above.

   This exclusion applies:

      a.  Whether the **Insured** may be liable as an employer or in any other capacity; and

      b.  To any obligations to share damages with or repay someone else who must pay damages because of such **bodily injury** or **personal injury.**

   This exclusion does not apply to liability assumed by the **Insured** under an **insured contract.**

B.  **SECTION I – COVERAGE, A. Insuring Agreement,** paragraph 6. is deleted.

C.  **SECTION I – COVERAGE, C. Exclusions,** paragraph 5. is deleted.

  Copyright, Genesis Insurance Company, 2001

D.    The following is added to **SECTION II - WHO IS AN INSURED**:

    H.    However, no employee is an **Insured** for:

        1.    **Bodily injury** or **personal injury** to **you** or to a co-employee while in the course of his or her employment, or the spouse, child, parent, brother or sister of that co-employee as a consequence of such **bodily injury** or **personal injury** or for any obligation to share damages with or repay someone else who must pay damages because of such **bodily injury** or **personal injury**.

Signed at Stamford, Connecticut on February 25, 2002

Copyright, Genesis Insurance Company, 2001

Authorized Representative

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Endorsement
Number _5_

| POLICY NUMBER | ENDORSEMENT EFFECTIVE | COMPANY |
|---|---|---|
| YXB300859 | January 1, 2002 | Genesis Insurance Company |
| NAMED INSURED | | COVERAGE PARTS AFFECTED |
| City of Council Bluffs | | The Public Policy Retained Limit Form Coverage Parts A and B |

### CHANGES

### IOWA STATUTORY DAMAGES CAP ENDORSEMENT

This Policy does not provide coverage for any **claim** made or **suit** brought against the **Insured** that arises out of any **occurrence, offense, wrongful act, or automobile hazard** for which the **Insured** has:

1.  Full immunity under Iowa common law or statutory law, or

2.  Partial immunity under any Iowa statutory law which places a monetary cap on the **Insured's** maximum liability for damages.

The existence of this Policy in no way serves as a waiver by the **Insured** of any immunity or partial immunity that attaches to the **Insured's** acts or omissions. Subject to the terms and conditions of this Policy and the relevant **Limit(s) of Insurance** shown on the **Declarations Page**, this Policy only provides coverage to the **Insured** if a court, which has jurisdiction to enforce a judgment over the **Insured**, determines for any reason, other than the mere existence of this Policy, that the damages awarded against the **Insured** are:

1.  Not subject to and excluded by full immunity under Iowa common law or statutory law, or

2.  Not subject to and limited by any Iowa statutory law which places a monetary cap on the **Insured's** maximum liability for damages.

The **First Named Insured**, on behalf of itself and all other **Insureds**, acknowledges that it has read, understands and accepts the terms, conditions, and limitations on coverage set forth in this Iowa Statutory Damages Cap Endorsement:

By: _Randall D Vaulon_

Title: _City Manager_

Date: _April 5, 2002_

Signed at Stamford, Connecticut on February 25, 2002

_Scott Pennell_

Authorized Representative

Copyright, Genesis Insurance Company, 2001

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Endorsement
Number 5

| POLICY NUMBER | ENDORSEMENT EFFECTIVE | COMPANY |
|---|---|---|
| YXB300859 | January 1, 2002 | Genesis Insurance Company |
| NAMED INSURED | | COVERAGE PARTS AFFECTED |
| City of Council Bluffs | | The Public Policy Retained Limit Form Coverage Parts A and B |

### CHANGES

### IOWA STATUTORY DAMAGES CAP ENDORSEMENT

This Policy does not provide coverage for any **claim** made or **suit** brought against the **Insured** that arises out of any **occurrence, offense, wrongful act,** or **automobile hazard** for which the **Insured** has:

1.  Full immunity under Iowa common law or statutory law, or

2.  Partial immunity under any Iowa statutory law which places a monetary cap on the **Insured's** maximum liability for damages.

The existence of this Policy in no way serves as a waiver by the **Insured** of any immunity or partial immunity that attaches to the **Insured's** acts or omissions.  Subject to the terms and conditions of this Policy and the relevant **Limit(s) of Insurance** shown on the **Declarations Page**, this Policy only provides coverage to the **Insured** if a court, which has jurisdiction to enforce a judgment over the **Insured**, determines for any reason, other than the mere existence of this Policy, that the damages awarded against the **Insured** are:

1.  Not subject to and excluded by full immunity under Iowa common law or statutory law, or

2.  Not subject to and limited by any Iowa statutory law which places a monetary cap on the **Insured's** maximum liability for damages.

The **First Named Insured**, on behalf of itself and all other **Insureds**, acknowledges that it has read, understands and accepts the terms, conditions, and limitations on coverage set forth in this Iowa Statutory Damages Cap Endorsement:

By: _____

Title: _____

Date: _____

Signed at Stamford, Connecticut on February 25, 2002

_Scott Penner_

_____
Authorized Representative

Copyright, Genesis Insurance Company, 2001

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Endorsement
Number 6

| POLICY NUMBER | ENDORSEMENT EFFECTIVE | COMPANY |
|---|---|---|
| YXB300859 | January 1, 2002 | Genesis Insurance Company |
| NAMED INSURED | | COVERAGE PARTS AFFECTED |
| City of Council Bluffs | | The Public Policy Retained Limit Form Coverage Part A |

### CHANGES

### EXCLUSION - EXISTENCE OR MAINTENANCE OF DAMS, DIKES, OR LEVEES

The following is added to **SECTION I – COVERAGE, C. Exclusions** of the **PUBLIC LIABILITY COVERAGE:**

This insurance does not apply to:

1. **Bodily injury, personal injury, advertising injury,** or **property damage** arising out of the existence, maintenance, operation, or use of any dam, dike, or levee **you** own, maintain, construct or control.

Signed at Stamford, Connecticut on February 25, 2002

*Scott Penney*

**PEPRLF-17 (02/01)**

Copyright, Genesis Insurance Company, 2001

Authorized Representative

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Endorsement
Number _7____

| POLICY NUMBER | ENDORSEMENT EFFECTIVE | COMPANY |
|---|---|---|
| YXB300859 | January 1, 2002 | Genesis Insurance Company |
| NAMED INSURED | | COVERAGE PARTS AFFECTED |
| City of Council Bluffs | | The Public Policy<br>Retained Limit Form<br>Coverage Part A |

### CHANGES

### LIMITED POLLUTION LIABILITY COVERAGE FOR PUBLIC ENTITIES

Paragraph 7. of Subsection **C. Exclusions** in **SECTION I - COVERAGE** is deleted and replaced by the following:

7.  a    For other than the **automobile hazard, bodily injury, personal injury, advertising injury** or **property damage**, arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

b.   For the **automobile hazard, bodily injury** or **property damage** arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time:

(1)   That are, or that are contained in any property that is:

(a)   Being transported or towed by, handled, or handled for movement into, onto or from   the covered **auto**;

(b)   Otherwise in the course of transit by or on behalf of the **Insured**; or

(c)   Being stored, disposed of, treated or processed in or upon the covered **auto**;

(2)   Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **Insured** for movement into or onto the covered **auto**; or

(3)    After the **pollutants** or any property in which the **pollutants** are contained are moved from the covered **auto** to the place where they are finally delivered, disposed of or abandoned by the **Insured**.

Paragraph b. (1) above only applies to liability assumed under a contract or agreement.

Paragraphs b. (2) and b. (3) above do not apply to **occurrences** that occur away from premises owned by or rented to an **Insured** with respect to **pollutants** not in or upon a covered **auto** if:

(1)    The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of a covered **auto**; and

(2)    The discharge, dispersal, seepage, migration, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

c.    Any  loss, cost or expense arising directly or indirectly out of any:

(1)    Request, demand order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

(2)    Claim or **suit** by or on behalf of a governmental authority or others because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of **pollutants**.

Paragraphs a. and b. of this exclusion do not apply to:

(1)    **Bodily injury** or **property damage** caused by heat, smoke or fumes from a **hostile fire**.  Hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be;

(2)    **Bodily injury** or **property damage** arising out of the unintentional discharge, dispersal, seepage, migration, release or escape of fuels, lubricants, or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of a covered **auto** or **mobile equipment** or its parts, if such fuels, lubricants or other operating fluids escape from the **auto** or **mobile equipment** part designed to hold, store or receive them; or

(3)    **Bodily injury** if sustained within a building which is or was at any time owned or occupied by, or rented to loaned to, any **Insured**, but only so long as the **bodily injury**, was caused by smoke, fumes, vapors or soot from equipment used to heat that building.

(4)    **Bodily injury** or **property damage** arising out of fire fighting activities, including training burns, or intentional demolition or burns for the purpose of limiting a fire, or the discharge of **pollutants** for the purpose of controlling a fire; or from police use of mace, oleoresin capsicum (O.C.), pepper gas or tear gas; or from weed abatement or tree spraying.

(5)  **Bodily injury** or **property damage** arising directly or indirectly out of storm or waste sewage backup, escape or release if such claim was:

  (i)  Accidental and neither expected nor intended by the **Insured**; and

  (ii)  Instantaneous and was demonstrable as having commenced at a specific time and date during the policy period.

For claims described in this exception, the Each Occurrence Limit as stated in **Item 3. Limit(s) of Insurance, Coverage Part A**, of the **Declarations** does not apply.  Instead, a separate **Limit of Insurance** of $1,000,000 Each Occurrence applies and is subject to the Coverage Part Aggregate Limit stated in **Item 3. Limit(s) of Insurance, Coverage Part A**, of the **Declarations**.

(6)  **Bodily injury** or **property damage** arising directly or indirectly out of discharge, dispersal, release, or escape of chlorine and other chemicals (gas, liquid or solid) which are being used or being prepared for use in fresh or wastewater treatment or in water used in swimming pools, wading pools or decorative fountains, if such discharge, dispersal, release, or escape was:

  (i)  Accidental and neither expected nor intended by the **Insured**; and

  (ii)  Instantaneous and was demonstrable as having commenced at a specific time and date during the policy period.

For claims described in this exception, the Each Occurrence Limit as stated in **Item 3. Limit(s) of Insurance, Coverage Part A**, of the **Declarations** does not apply.  Instead, a separate **Limit of Insurance** of $1,000,000  Each Occurrence applies and is subject to the Coverage Part Aggregate Limit stated in **Item 3. Limit(s) of Insurance, Coverage Part A**, of the **Declarations**.

(7)  **Bodily injury** or **property damage** arising directly or indirectly out of the discharge of **pollutants** occurring during the collection and transportation of hazardous and nonhazardous materials as part of any drop-off or curbside recycling program implemented and operated by the **Insured**, including storage of such recyclable materials by the **Insured** for a continuous period not exceeding ninety (90) days, if such discharge was:

  (i)  Accidental and neither expected nor intended by the **Insured**; and

  (ii)  Instantaneous and was demonstrable as having commenced at a specific time and date during the policy period.

For claims described in this exception, the Each Occurrence Limit as stated in **Item 3. Limit(s) of Insurance, Coverage Part A**, of the **Declarations** does not apply.  Instead, a separate **Limit of Insurance** of $1,000,000 Each Occurrence applies and is subject to the Coverage Part Aggregate Limit stated in **Item 3. Limit(s) of Insurance, Coverage Part A**, of the **Declarations**.

(8)     **Bodily injury** or **property damage** arising directly or indirectly out of the discharge of **pollutants** occurring during the collection and transportation of materials as part of garbage collection activities implemented and operated by the **Insured**, excluding any recycling program, if such discharge was:

    (i)     Accidental and neither expected nor intended by the **Insured**; and

    (ii)    Instantaneous and was demonstrable as having commenced at a specific time and date during the policy period.

However, this exception to the exclusion does not apply once the **pollutants** have been deposited at a landfill, garbage dump, or other waste disposal or transfer facility.

(9)     Activities of the **Insured** to test for, monitor, clean up, remove, contain treat, detoxify or neutralize **pollutants**, if such action is in response to a spill, release or other hazardous condition which was not from premises, equipment or location presently or formerly under the ownership or control of the **Insured**.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

Signed at Stamford, Connecticut on February 25, 2002

_Scott Pennell_

Authorized Representative

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Endorsement
Number  8

| POLICY NUMBER | ENDORSEMENT EFFECTIVE | COMPANY |
|---|---|---|
| YXB300859 | January 1, 2002 | Genesis Insurance Company |
| NAMED INSURED | | COVERAGE PARTS AFFECTED |
| City of Council Bluffs | | The Public Policy<br>Retained Limit Form<br>Coverage Part A<br>Coverage Part B |

### CHANGES

### NUCLEAR ENERGY LIABILITY EXCLUSION

This insurance does not apply to:

**Bodily injury, personal injury, advertising injury, or property damage:**

a.  To an **Insured** under this policy who is also an **Insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

b.  Resulting from the **hazardous properties of nuclear material** and with respect to which:

    (1)  Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

    (2)  The **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

c.  Resulting from the **hazardous properties of nuclear material**, if:

    (1)  The **nuclear material**:

        (a)  Is at any **nuclear facility** owned by, or operated by or on behalf of an **Insured**; or

        (b)  Has been discharged or dispersed therefrom;

(2)    The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

(3)    The **bodily injury, personal injury, advertising injury,** or **property** damage arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility,** but if such facility is located within the United States of America, its territories or possessions, or Canada, then subparagraph (3) applies only to **property damage** to or at such **nuclear facility** and any property thereat.

As used in this exclusion:

a.    **Hazardous properties** include radioactive, toxic or explosive properties.

b.    **Nuclear material** means **source material, special nuclear material** or **by-product material.**

c.    **Source material, special nuclear material,** and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

d.    **Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor.**

e.    **Waste** means any waste material:

(1)    Containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content, and

(2)    Resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility.**

f.    **Nuclear facility** means:

(1)    Any nuclear **reactor;**

(2)    Any equipment or device designed or used for:

(a)    Separating the isotopes of uranium or plutonium,

(b)    Processing or utilizing **spent fuel,** or

(c)    Handling, processing or packaging **waste;**

(3)     Any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(4)     Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g.     **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

h.     **Property damage** includes all forms of radioactive contamination of property.

Signed at Stamford, Connecticut on February 25, 2002

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Endorsement
Number 9

| POLICY NUMBER | ENDORSEMENT EFFECTIVE | COMPANY |
|---|---|---|
| YXB300859 | January 1, 2002 | Genesis Insurance Company |
| **NAMED INSURED** | | **COVERAGE PARTS AFFECTED** |
| City of Council Bluffs | | The Public Policy Retained Limit Form Coverage Part A |

### CHANGES

### ADDITIONAL INSUREDS – RAILROADS AND OTHER DESIGNATED ENTITIES

### SCHEDULE

**Additional Insureds - Scheduled Railroads and Other Designated Entities:**

1. The Burlington Northern and Santa Fe Railway Company
   4515 Kansas Avenue
   Kansas City, MO 66106

2. CBEC Railway, Inc.
   106 East 2nd Street
   Davenport, IA 52801

3. Union Pacific Railroad Company
   1800 Farnam Street
   Omaha, NE 68102

4. MidAmerican Energy Company
   106 2nd Street
   Davenport, IA 52801

**Designated Bike Trails:**     Mosquito Creek Recreation Trail System

**Premium:** $10,000

**SECTION II – WHO IS AN INSURED** is amended to include as an **Insured** the railroads and other designated entities shown in the Schedule, but only with respect to their liability arising out of the construction, demolition, maintenance, ownership, operation or use of the designated bike/pedestrian trail system shown in the Schedule by **you** or on **your** behalf.   However, this insurance does not apply to **bodily injury, personal injury, advertising injury** or **property damage** arising out of the sole negligence of the railroads and other designated entities shown in the Schedule.

Further, with respect to the insurance provided by this endorsement, paragraph 3. in subsection **J. Insured contract** in **SECTION IV – DEFINITIONS** is replaced by the following:

3.     Any easement or license agreement except in connection with:

   a.     Vehicle or pedestrian private railroad crossings at grade; or

   b.     Construction or demolition operations on or within 50 feet of a railroad.

   However, an **insured contract** will include the construction, demolition, maintenance, ownership, operation or use of the Mosquito Creek Recreation Trail system by **you** or on **your** behalf.

Signed at Stamford, Connecticut on May 2, 2002
GIC 999-1

_____
Authorized Representative

Copyright, Genesis Insurance Company, 2001

# Coverage Part A
# Public Liability

**Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.**

Throughout this Coverage Part the words **you** and **your** refer to the **Named Insured(s)** shown on the **Declarations Page** and any other person, entity or organization qualifying as a Named Insured under this Coverage Part. The words **we, us** and **our** refer to Genesis Insurance Company.

The word **Insured** means any person or organization qualifying under **SECTION II - WHO IS AN INSURED.**

The words and phrases that are in bold have special meaning. Please refer to **SECTION IV - DEFINITIONS** for their meaning or take note of the reference within the text.

---

## SECTION I - COVERAGE

A.   **Insuring Agreement**

1.   Subject to the applicable **Limit(s) of Insurance** of this Coverage Part, **we** agree to indemnify the **Insured** for **ultimate net loss** in excess of the **retained limit** for which the **Insured** becomes legally obligated to pay because of **bodily injury, personal injury, advertising injury,** or **property damage** which occurs during this policy period and to which this insurance applies. **Our** indemnification obligation shall not arise until the **Insured** has paid in full the entire amount of its **retained limit.** No other obligation or liability to pay sums or perform acts or services is covered. The **Insured's** obligation to pay shall have been determined by judgment against the **Insured** after a contested **suit** or by written agreement between the **Insured(s)** and the claimant(s) which has received **our** prior approval.

2.   This insurance applies to **bodily injury, personal injury, advertising injury,** or **property damage** which occurs during this policy period, provided that prior to this policy period, no **Insured** listed under paragraphs **A.** or **B. 1., 2.,** or **3.** of **SECTION II – WHO IS AN INSURED** or no person authorized by **you** to give or receive notice of an **occurrence** or claim, knew that the **bodily injury, personal injury, advertising injury,** or **property damage** had occurred, in whole or part. If such listed **Insured** or authorized person knew, prior to this policy period, that the **bodily injury, personal injury, advertising injury,** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury, personal injury, advertising injury,** or **property damage** during or after this policy period will be deemed to have been known prior to this policy period and will not be covered hereunder.

3. Bodily injury, personal injury, advertising injury, or property damage which occurs during this policy period and was not, prior to this policy period, known to have occurred by an **Insured** listed under paragraphs **A.** or **B.** 1., 2., or 3. of **SECTION II** – **WHO IS AN INSURED** or any person authorized by **you** to give or receive notice of an **occurrence** or claim, includes any continuation, change or resumption of that **bodily injury, personal injury, advertising injury, or property damage** after the end of this policy period.

4. Bodily injury, personal injury, advertising injury, or **property damage** will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under paragraphs **A.** or **B.** 1., 2., or 3. of **SECTION II** – **WHO IS AN INSURED** or any person authorized by **you** to give or receive notice of an **occurrence** or claim:

   a. Reports all, or any part, of the **bodily injury, personal injury, advertising injury, or property damage** to **us** or any other insurer;

   b. Receives a written or verbal demand or claim for damages because of **bodily injury, personal injury, advertising injury, or property damage**; or

   c. Actually or constructively becomes aware by any other means that **bodily injury, personal injury, advertising injury, or property damage** has occurred or had begun to occur.

5. Damages because of **bodily injury** which occur during this policy period include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **bodily injury**.

6. With respect to **your** liability for **bodily injury** which occurs during this policy period to **your** employees, **bodily injury** by disease must be caused or aggravated by the conditions of their employment by **you**. The employee's last day of last exposure to the conditions causing or aggravating such **bodily injury** by disease must occur during this policy period. A separate **occurrence** shall apply to each accident or, with respect to disease, each employee.

7. Damages because of **bodily injury** or **personal injury** which occurs while insured by Genesis Insurance Company or Genesis Indemnity Insurance Company include damages resulting from **non-employment harassment**, including sexual molestation. All such **bodily injury** or **personal injury** shall be deemed to have occurred at the time of the initial **non-employment harassment** while insured by Genesis Insurance Company or Genesis Indemnity Insurance Company and all such **bodily injury** or **personal injury** shall be deemed to be one **occurrence** whether committed by the same perpetrator or two or more perpetrators acting in concert and without regard to the number of incidents of **non-employment harassment** taking place thereafter. The insurance provided does not apply to any **Insured** who is found by a court of law to have committed a criminal act of **non-employment harassment**.

In any event, the **bodily injury, personal injury, advertising injury, or property damage** must be caused by an **occurrence** and the **occurrence** must take place in the **coverage territory**.

PEPRLF-A (02/01)        Copyright, Genesis Insurance Company, 2001        Page 2 of 20

### B.   Defense

We have no duty to defend any claim or **suit** but **we** shall have the right and **you** shall give **us** the opportunity to associate in the defense of any claim or **suit** against the **Insured** seeking damages for **bodily injury, personal injury, advertising injury,** or **property damage,** which, in **our** sole opinion, may create indemnification obligations for **us** under this Coverage Part. In addition:

1.   The **Insured,** or the **Named Insured** on the **Insured's** behalf, has the duty to defend any claim or **suit** seeking damages to which this insurance applies and shall be responsible for any **claim expenses** separate from and in addition to the **retained limit.**

2.   When the **Insured's** legal obligation to pay **ultimate net loss** to which this insurance applies has been determined, and this amount is greater than the **retained limit,** then and only then will the **Insured** be entitled to make claim for indemnity under this Coverage Part.   The **Insured** shall make such claim for indemnification as soon as practicable after it has paid or will pay the **retained limit.**  **We** shall then indemnify the **Insured** for (a) the amount of such **ultimate net loss** in excess of the **retained limit** subject to the Coverage Part's relevant **Limit(s) of Insurance** set forth in the **Declarations Page** or in any endorsement and (b) for a portion of the **claim expenses** incurred by the **Insured.  Our** portion of **claim expenses** shall be calculated using the following formula: [**ultimate net loss** subject to indemnification by this Coverage Part ÷ total amount of **ultimate net loss**] x [total **claim** expenses].   This indemnity for a portion of the **Insured's claim expenses** shall be in addition to this Coverage Part's relevant **Limit(s) of Insurance** set forth in the **Declarations Page** or in any endorsement.

3.   The **Insured** must obtain **our** prior written consent before offering or agreeing to pay an amount which exceeds the **retained limit** in order to settle any claim or **suit** seeking damages to which this insurance applies either in whole or in part.

4.   **We** shall also have the right, but not the duty, to assume control in the defense of any claim or **suit** which, in **our** sole opinion, may create indemnification obligations for **us** under this Coverage Part.   This assumption of control shall include, but not be limited to:

   a.   The investigation of any **occurrence, offense,** claim or **suit;**

   b.   The selection or retention of defense counsel;

   c.   The appeal of any judgment; or

   d.   The settlement of any claim or **suit.**

If **we** exercise **our** rights specified in this paragraph, **we** shall pay the related **claim expenses.**

C.    **Exclusions**

This insurance does not apply to:

1.    **Bodily injury** or **property damage** either expected or intended from the standpoint of the Insured. This exclusion does not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property or, with respect to **your** law enforcement activities or **your** departmentally-approved law enforcement activities for others, to an act of the Insured (unless deemed to be a criminal act) within the arrest or incarceration process.

2.    **Bodily injury, personal injury, advertising injury, or property** damage that the Insured is obligated to pay by reason of the assumption of liability in any contract or agreement. This exclusion does not apply to liability:

    a.    Assumed in a contract or agreement that is an **insured contract**; or

    b.    The **Insured** would have in the absence of the contract or agreement.

3.    Liability which is covered in whole or part under **Coverage Part B.**

4.    Liability imposed on the **Insured** or the **Insured's** insurer, under any of the following laws:

    a.    Employee Retirement Income Security Act (ERISA) of 1974, including any subsequent amendments or any similar federal, state or local law or regulations;

    b.    Any uninsured motorists, underinsured motorists, or automobile no-fault or first party **bodily injury** or **property damage** law;

    c.    Any workers compensation, unemployment insurance, social security or disability benefits law, or any similar law; or

    d.    Any obligation of the **Insured** under the Jones Act, general maritime law, the Federal Employers Liability Act, Federal Employee Compensation Act, the Defense Base Act or the U.S. Longshoremen and Harbor Workers Compensation Act.

5.    Punitive or exemplary damages because of **bodily injury** to your employee while employed by **you** in violation of the law with **your** actual knowledge or the actual knowledge of **your** elected or appointed officials.

6.    **Bodily injury, personal injury, advertising injury, or property** damage arising from **employment wrongful act(s).**

7.    a.    For other than the **automobile hazard, bodily injury, personal injury, advertising injury,** or **property damage** arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

b.   For the **automobile hazard, bodily injury** or **property damage** arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time:

(1)   That are, or that are contained in any property that is:

(a)   Being transported or towed by, handled, or handled for movement into, onto or from the covered **auto**;

(b)   Otherwise in the course of transit by or on behalf of the **Insured**; or

(c)   Being stored, disposed of, treated or processed in or upon the covered **auto**;

(2)   Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **Insured** for movement into or onto the covered **auto**; or

(3)   After the **pollutants** or any property in which the **pollutants** are contained are moved from the covered **auto** to the place where they are finally delivered, disposed of or abandoned by the **Insured**.

Paragraph b. (1) above only applies to liability assumed under a contract or agreement.

Paragraphs b. (2) and b. (3) above do not apply to **occurrences** that occur away from premises owned by or rented to an **Insured** with respect to **pollutants** not in or upon a covered **auto** if:

(1)   The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of a covered **auto**; and

(2)   The discharge, dispersal, seepage, migration, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

c.   Any loss, cost or expense arising directly or indirectly out of any:

(1)   Request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

(2)   Claim or **suit** by or on behalf of a governmental authority or others because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of **pollutants**.

**Pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned, or reclaimed.

Paragraphs a. and b. of this exclusion do not apply to:

(1) **Bodily injury** or **property damage** caused by heat, smoke or fumes from a **hostile fire**. **Hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be;

(2) **Bodily injury** or **property damage** arising out of the unintentional discharge, dispersal, seepage, migration, release or escape of fuels, lubricants, or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of a covered **auto** or **mobile equipment** or its parts, if such fuels, lubricants or other operating fluids escape from the **auto** or **mobile equipment** part designed to hold, store or receive them; or

(3) **Bodily injury** if sustained within a building which is or was at any time owned or occupied by, or rented to loaned to, any **Insured**, but only so long as the **bodily injury**, was caused by smoke, fumes, vapors or soot from equipment used to heat that building.

8.  **Bodily injury, personal injury, advertising injury,** or **property damage** arising directly or indirectly out of storm or waste sewage backup, escape or release.

9.  **Bodily injury, personal injury, advertising injury,** or **property damage** arising out of the ownership, operation, maintenance, use or entrustment to others of any aircraft, airfields, runways, hangars, buildings, or other properties in connection with any aviation activities or airports owned or operated by or rented or loaned to any **Insured**.

    Use includes **loading or unloading**.

    However, this exclusion does not apply to liability assumed under any **insured contract** for the ownership, maintenance or use of any aircraft.

10. **Bodily injury, personal injury, advertising injury,** or **property damage** arising out of or in connection with the operation of any hospital, nursing home, or other health care facility in which overnight care is provided, which is owned or operated by the **Insured**, or to any such liability assumed by the **Insured** under contract.

11. **Personal injury** or **advertising injury**:

    a.  Arising out of electronic or other publication, transmission, dissemination or storage of material, if done by or at the direction of the **Insured** with knowledge of its falsity;

b.    Arising out of electronic or other publication, transmission, dissemination or storage of material whose first publication, transmission, dissemination or storage took place before the beginning of the policy period; or

c.    Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **Insured**.

12.    Liability assumed under any **insured contract** for **bodily injury** or **property damage** due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion, revolution, or acts of terrorism.

13.    **Property damage** to:

a.    Property owned, rented or occupied by any **Insured**;

b.    Property loaned to any **Insured**;

c.    Premises **you** sell, give away, or abandon, if the **property damage** arises out of any part of those premises; or

d.    Personal property in the care, custody, or control of any **Insured** except:

    (1)    Property in the possession of persons at time of arrest or incarceration; or

    (2)    Damage sustained to property impounded, held or in bailment at **your police impound lot, parking lot and parking garage** operations. (For claims described in this exception, the Each **Occurrence** Limit and the Coverage Part Aggregate Limit of this Coverage Part as stated in **Item 3. Limit(s) of Insurance, Coverage Part A,** of the **Declarations** do not apply. Instead, a separate limit of insurance of $500,000 Each **Occurrence** and $500,000 Coverage Part Aggregate Limit, in excess of the **retained limit,** apply.)

    Paragraph d. (2) above does not apply to:

        (a)    Any liability resulting from any contractual obligation by which the **Insured** accepts responsibility for loss; or

        (b)    Loss due to theft or conversion caused in any way by **you** or **your** employees.

14.    **Property damage** to **your product** arising out of it or any part of it.

15.    **Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard.**

16.    **Property damage** to **impaired property** or property not physically injured, arising out of:

a.    A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work;** or

b.    A delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

17.    **Bodily injury, personal injury, advertising injury,** or **property damage** arising directly or indirectly out of, resulting from, caused by or contributed to by:

a.    The use of, sale of installation of, removal of, abatement of, distribution of, containment of, or exposure to asbestos, asbestos products, asbestos-containing material, asbestos fibers, or asbestos dust;

b.    The actual or threatened abatement, mitigation, removal or disposal of asbestos, asbestos products, asbestos-containing material, asbestos fibers, or asbestos dust;

c.    Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts a. and b. above; or

d.    Any obligation of the **Insured** to indemnify any party in connection with subparagraphs a. b. or c. above.

18.    **Bodily injury, personal injury, advertising injury,** or **property damage** arising directly or indirectly out of, resulting from, caused or contributed to by electromagnetic radiation, provided that such loss, cost or expense results from or is contributed to by the hazardous properties of electromagnetic radiation. This includes any costs for the actual or threatened abatement, mitigation, or removal.

19.    **Bodily injury, personal injury, advertising injury,** or **property damage** arising directly or indirectly out of, resulting from, caused by or contributed to by:

a.    The toxic or pathological properties of lead, lead compounds or lead contained in any materials;

b.    The actual or threatened abatement, mitigation, removal or disposal of lead, lead compounds or materials containing lead;

c.    Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts a. or b. above; or

d.    Any obligation of the **Insured** to indemnify any party in connection with subparagraphs a. b. or c. above.

20.   **Bodily injury, personal injury, advertising injury,** or **property damage** arising directly or indirectly out of, resulting from, caused by or contributed to by:

    a.   Any **fungus(es)** or **spore(s);**

    b.   Any solid, liquid, vapor, or gas produced by or arising out of any **fungus(es)** or **spore(s);**

    c.   Any material, product, building component, or building structure that contains, harbors, nurtures or acts as a medium for any **fungus(es)** or **spore(s);**

    d.   Any intrusion, leakage, or accumulation of water or any other liquid that contains, harbors, nurtures or acts as a medium for **fungus(es)** or **spore(s);**

    e.   The actual or threatened abatement, mitigation, removal or disposal of **fungus(es)** or **spore(s)** or any material, product, building component, or building structure that contains, harbors, nurtures or acts as a medium for any **fungus(es)** or **spore(s);**

    f.   Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with subparagraphs a., b., c., d., or e. above; or

    g.   Any obligation of the **Insured** to indemnify any party in connection with subparagraphs a., b., c., d., e., or f. above.

**Fungus(es)** includes, but is not limited to, any form or type of mold, mushroom or mildew.

**Spore(s)** include any reproductive body produced by or arising out of any **fungus(es).**

Exception: This Exclusion 20., parts a., b., c., and d. are subject to a limited exception for such **ultimate net loss** otherwise covered by the terms and conditions of this Coverage Part in excess of the **retained limit.** This limited exception provides only the following separate sublimit of insurance: (a) $100,000 each **Occurrence,** subject to (b) $200,000 in the Aggregate for all policy periods insured by Genesis Insurance Company or Genesis Indemnity Insurance Company.

Notwithstanding **SECTION I - B. 2.** or any other term or condition contained in this policy including any endorsement, under no circumstances will this limited exception to Exclusion 20. provide indemnification for **claim expenses** or any other expense incurred in the defense of such claim or **suit,** nor will such amounts serve to erode the **retained limit.**

21.   **Bodily injury, personal injury, advertising injury,** or **property damages** arising out of any land use issue, including but not limited to, condemnation, inverse condemnation, adverse possession, dedication by adverse use, or disputes involving the application of impact or linkage fees. This includes, but is not limited to takings and partial takings of private property resulting from the application of a land use, zoning, building, subdivision or similar ordinance or regulation.

22. **Bodily injury, personal injury, advertising injury,** or **property damages** arising from the complete or partial failure to adequately supply gas, oil, water, electricity or steam. However, this exclusion does not apply if the failure to supply results from the sudden and accidental injury to tangible property owned or used by any **Insured** to procure, produce, process, store or transmit the gas, oil, water, electricity or steam.

23. **Bodily injury, personal injury, advertising injury,** or **property damages** arising from subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, mud flow, rising, tilting, or any other land or earth movement, including earthquake.

24. **Bodily injury, personal injury, advertising injury,** or **property damages** arising from any investigation, claim, **suit** or other proceeding seeking relief or redress in any form other than money damages, including but not limited to, costs, fees, or expenses which the **Insured** may become obligated to pay as a result of a consent decree, settlement or adverse judgment for declaratory relief or injunctive relief.

## SECTION II - WHO IS AN INSURED

A. **You** are an **Insured**.

B. Each of the following is an **Insured** while acting within the scope of their duties as such:

   1. All persons who were, are now, or shall be **your** lawfully elected, appointed or employed officials.

   2. Current or former commissions, boards or other entities, including their current or former members, under **your** exclusive operation and jurisdiction.

   3. All of **your** current or former employees.

   4. All persons who perform a service on a volunteer basis for **you**, provided such performance is under **your** direction and control. This does not include any person working on retainer or as an independent contractor.

   5. All persons, entities, or organizations providing service to **you** under any mutual aid or similar agreement.

   6. The estate of any person in 1. through 5. above.

C. Any person, entity, or any organization while acting as **your** real estate manager.

D. Any person, entity, or any organization **you** are required by an **insured contract** to include as an **Insured**. This insurance shall be limited to the extent of coverage and Limits of Liability required by the **insured contract** and shall not increase the limits stated in **SECTION III - LIMIT(S) OF INSURANCE** or alter any of the terms of coverage stated in this Coverage Part. The **insured contract** must be effective and executed prior to a covered **occurrence**.

**E.**     With respect to:

> **Mobile equipment** or any **auto**, any person is an **Insured** while driving such **auto** or **mobile equipment** with **your** permission. Any person, entity, or organization responsible for the conduct of such person is also an **Insured**, but only with respect to **bodily injury** or **property damage** arising out of the operation of the **auto** or **mobile equipment**.
>
> However, the owner or anyone else from whom **you** hire or borrow an **auto** is an **Insured** only if that **auto** is a trailer connected to an **auto you** own.
>
> However, no person, entity, or organization is an **Insured** under this paragraph **E.** with respect to:
>
> 1.     **Property damage** to property owned by **you** or the employer of any person who is an **Insured** under this provision;
>
> 2.     Any **auto you** hire or borrow from one of **your** employees, volunteers or members of their households, if they are the owner of such **auto**, unless acting within the scope of their duties on **your** behalf;
>
> 3.     Any **auto** being used by a person employed in the business of selling, servicing, repairing, or parking **autos** unless they are **your** employees; or
>
> 4.     The movement of property to or from an **auto** except **you, your** employees, lessees or borrowers of such **auto**, and any employee of the lessees or borrowers.

**F.**     Any entity or organization **you** newly acquire or form and over which **you** have exclusive jurisdiction will qualify as a **Named Insured** if there is no other similar insurance available to that entity or organization.

> However:
>
> 1.     Coverage under this provision is afforded only until the 90th day after **you** acquire or form the entity or organization or the end of the policy period, whichever is earlier;
>
> 2.     Coverage does not apply to **bodily injury** or **property damage** that occurred before **you** acquired or formed the entity or organization; and
>
> 3.     Coverage does not apply to **personal injury** or **advertising injury** arising out of an offense committed before **you** acquired or formed the entity or organization.

**G.**     No person, entity, or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a **Named Insured** in the **Declarations Page**.

**SECTION III - LIMIT(S) OF INSURANCE**

A.　The **Limit(s) of Insurance** shown in Item 3. of the **Declarations Page** and the rules below fix the most we will indemnify the **Insured** under this Coverage Part regardless of the number of:

　　1.　**Insureds;**

　　2.　Claims made or **suits** brought; or

　　3.　Persons or organizations making claims or bringing **suits.**

B.　1.　The each occurrence **Limit of Insurance** is the most we will indemnify the **Insured** for **ultimate net loss** under **Coverage Part A** for any single **occurrence.**

　　2.　Subject to subparagraph **B. 1.** above, the **Coverage Part A** Aggregate Limit is the most we will indemnify the **Insured** for all **ultimate net loss** during the policy period for all covered **occurrences**, except **ultimate net loss** because of **bodily injury** or **property damage** arising from the **automobile hazard.**

C.　The each **occurrence Limit of Insurance** and the **Coverage Part A** Aggregate Limit apply to **ultimate net loss** in excess of the **retained limit** shown on the **Declarations Page, Item 2., Schedule of Retained Limit(s), Coverage Part A,** and will not be reduced by the **retained limit.**

D.　The **Limit(s) of Insurance** applies separately to each consecutive annual period, and to any remaining period of less than twelve (12) months, starting with the beginning of the policy period shown on the **Declarations Page,** unless the policy period is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the **Limit(s) of Insurance.**

**SECTION IV - DEFINITIONS**

A.　**Advertising injury** means injury arising out of one or more of the following **offenses** committed in the course of advertising **your** goods, products or services:

　　1.　Electronic or other publication, transmission, dissemination or storage of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

　　2.　Electronic or other publication, transmission, dissemination or storage of material that violates a person's right of privacy;

　　3.　Misappropriation of advertising ideas or style of doing business; or

　　4.　Infringement of copyright, title, or slogan.

B.   **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. However, an **auto** does not include **mobile equipment**.

C.   **Automobile hazard** means **bodily injury** or **property damage** arising out of the ownership, use (including maintenance or repair), **loading or unloading** of any **auto**.

D.   **Bodily injury** means bodily injury, sickness, disease, shock, fright, mental injury or anguish, emotional distress or disability sustained by a natural person, including death resulting from any of these at any time. It also includes injury arising out of the rendering of or failure to render medical or premedical services to persons:

   1.   By any physician, dentist, nurse, emergency technician, first aid attendant or paramedic who is employed by **you** to provide such services;

   2.   By any police officer, firefighter or employee specifically trained and certified by a licensed organization to provide such services; or

   3.   By any third party emergency technician, first aid attendant or paramedic providing services to **you** under a mutual aid agreement.

E.   **Claim expenses** mean:

   1.   Claim investigation costs;

   2.   Legal expenses; or

   3.   Litigation costs, including but not limited to **pre- and post-judgment interest** as required by law on awards and judgments and the cost of bonds to release attachments or to appeal without any obligation to furnish such bonds;

   which are reasonable in amount and can be directly allocated to the defense of an **Insured** against a specific claim or **suit** to which this Coverage Part applies.

   **Claim expenses** also includes reasonable attorney fees and necessary litigation expenses incurred which are the **Insured's** obligation under an **insured contract** in the defense of an indemnitee or incurred by an indemnitee at the **Insured's** request.

   **Claim expenses** do not include salaries and expenses of any **Insured** (including affiliate or subsidiary organizations of any **Insured**), annual retainers, overhead, and any fees paid for claim administration.

F.   **Coverage territory** means anywhere in the world if the **Insured's** responsibility to pay damages is determined in a **suit** brought in the United States of America (including its territories and possessions), Puerto Rico or Canada.

G.   **Employment-related harassment** means unwelcome or offensive verbal or physical conduct, including sexual advances, requests for sexual favors, or other verbal, visual or physical conduct of a sexual nature against a prospective, present or former employee of the **Named Insured**.

H.   **Employment wrongful act(s)** means any actual or alleged error or misstatement or misleading statement, act or omission, neglect, negligence or breach of duty by an **Insured** provided it arises from an employment relationship with the claimant involving refusal to employ, termination of employment, wrongful demotion, wrongful failure to promote, negative evaluation, hostile work environment, reassignment, wrongful discipline, defamation, humiliation, false arrest, false imprisonment, coercion, libel, slander, retaliation, invasion of privacy, failure to grant tenure, **employment-related harassment** or discrimination.

I.   **Impaired property** means tangible property, other than **your product** or **your work** that cannot be used or is less useful because:

    1.   It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

    2.   **You** have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    1.   The repair, replacement, adjustment or removal of **your product** or **your work**; or

    2.   **Your** fulfilling the terms of the contract or agreement.

J.   **Insured contract** means:

    1.   A lease of premises;

    2.   A sidetrack agreement;

    3.   Any easement or license agreement except in connection with:

        a.   Vehicle or pedestrian private railroad crossings at grade; or

        b.   Construction or demolition operations on or within 50 feet of a railroad;

    4.   A mutual aid assistance agreement or contract between political subdivisions;

    5.   An elevator maintenance agreement;

    6.   Any law enforcement service agreement for anyone other than **you** provided such agreement has received **your** departmental approval;

    7.   That part of any other contract or agreement pertaining to **your** operation under which **you** assume the **tort liability** of another because of **bodily injury** or **property damage** to a third person or organization, if the contract or agreement is made prior to the **bodily injury** or **property damage**; or

    8.   That part of any contract or agreement entered into, as part of the **Insured's** operation, by the **Insured** or any of the **Insured's** employees pertaining to the rental or lease of any **auto**.

An **insured contract** does not include that part of any contract or agreement:

1. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

   b. Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

2. Under which the **Insured**, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the **Insured's** rendering or failure to render professional services, including but not limited to, those listed in paragraph 1.a. above and supervisory, inspection or engineering services;

3. That indemnifies any person or organization for damage by fire to premises rented or loaned to **you**;

4. That pertains to the loan, lease or rental of an **auto** to the **Insured** or any of the **Insured's** employees, if the **auto** is loaned, leased or rented with a driver; or

5. That holds a person or organization engaged in the business of transporting property by **auto** for hire harmless for the **Insured's** use of a covered **auto** over a route or territory that a person or organization is authorized to serve by public authority.

K. **Loading or unloading** means the handling of property:

1. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft, **auto** or **mobile equipment**;

2. While it is in or on an aircraft, watercraft, **auto** or **mobile equipment**; or

3. While it is being moved from an aircraft, watercraft, **auto** or **mobile equipment** to the place where it is finally delivered; but **loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft, **auto** or **mobile equipment.**

L. **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises **you** own or rent;

3. Vehicles that travel on crawler treads;

4.     Vehicles whether self-propelled or not, with permanently mounted:

    a.     Power cranes, shovels, loaders, diggers or drills; or

    b.     Road construction or resurfacing equipment such as graders, scrapers or rollers;

5.     Vehicles not described in 1., 2., 3., or 4. immediately preceding that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a.     Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b.     Cherry pickers and similar devices used to raise or lower workers;

6.     Vehicles not described in 1., 2., 3., or 4. of this section maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos:**

    a.     Equipment designed primarily for:

        (1)     Snow removal;

        (2)     Road maintenance, but not construction or resurfacing; or

        (3)     Street cleaning;

    b.     Cherry pickers and similar devices mounted on automobiles or truck chassis and used to raise or lower workers; and

    c.     Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

**M.**     **Non-employment harassment** means unwelcome or offensive verbal or physical conduct, including sexual advances, requests for sexual favors, or other verbal, visual or physical conduct of a sexual nature against anyone other than a prospective, present or former employee of the **Named Insured.**

**N.**     **Occurrence** means:

1.     With respect to **bodily injury** and **property damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

2.     With respect to **personal injury** and **advertising injury**, an offense or series of related **offenses.**

**O.**    **Offense** means any of the **offenses** included in the definitions of advertising injury or personal injury.

**P.**    **Parking lot and parking garage** mean:

      1.    Those areas **you** own and operate that are used by the general public, including **your** employees, to park **autos** or **mobile equipment** whether or not a fee is charged; and

      2.    Those areas where **you**, or an **Insured** on **your** behalf, are exercising physical control over such **autos** or **mobile equipment** or otherwise where **your** legal liability has been established.

**Q.**    **Personal injury** means injury, other than **bodily injury**, arising out of one or more of the following **offenses** from the conduct of **your** operations:

      1.    False arrest, detention or imprisonment;

      2.    Malicious prosecution;

      3.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor,

      4.    Electronic or other publication, transmission, dissemination or storage of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

      5.    Electronic or other publication, transmission, dissemination or storage of material that violates a person's right of privacy.

**Personal injury** also includes the following **offenses**, but only with respect to **your** law enforcement activities or **your** departmentally approved law enforcement activities for others:

      6.    Assault and battery;

      7.    Violation of civil rights;

      8.    Violation of property rights;

      9.    Erroneous service of process; or

     10.    Failure of **your** law enforcement department and its employees to follow departmentally approved policy(ies) or procedure(s).

**R.**    **Police impound lot** means those locations **you** own or operate, where **autos** or **mobile equipment** that are seized pursuant to law are stored.  **Police impound lot** also includes that portion of the roads or on the ways adjacent to these locations.

**S.**   **Pre-judgment interest** means interest added to a settlement, verdict, award or judgment based on the amount of time prior to the settlement, verdict, award or judgment whether or not made part of the settlement, verdict, award or judgment.

**T.**   1.   **Products-completed operations hazard** includes all **bodily injury** and **property damage** occurring away from premises **you** own or rent and arising out of **your product** or **your work** except:

   a.   Products that are still in **your** physical possession; or

   b.   Work that has not yet been completed or abandoned.

2.   **Your work** will be deemed completed at the earliest of the following times:

   a.   When all of the work called for in **your** contract has been completed.

   b.   When all of the work to be done at the site has been completed if **your** contract calls for work at more than one site.

   c.   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

3.   This hazard does not include **bodily injury** or **property damage** arising out of:

   a.   The transportation of property unless the injury or damage arises out of a condition in or on a vehicle created by the **loading or unloading** of it;

   b.   The existence of tools, uninstalled equipment or abandoned or unused materials.

**U.**   **Property damage** means:

   1.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   2.   Loss of use of tangible property that has not been physically injured. All such loss of use shall be deemed to have occurred at the time of the **occurrence** that caused it.

V.     **Retained limit** means:

    1.     The amount as shown in **Item 2, Coverage Part A** of the **Declarations Page, Schedule of Retained Limit**. This amount applies to each and every **occurrence**.

    2.     The **retained limit** shall be comprised only of **ultimate net loss**. The Insured shall be responsible for all **claim expenses** incurred without any right to indemnification in accordance with this Coverage Part's terms and conditions until the **retained limit** is exhausted as a result of the **ultimate net loss**. The **retained limit** shall not be impaired by any claims or parts of claims brought against the **Insured** for coverages which are not included in the terms of this Coverage Part.

W.     **Suit** means a civil proceeding in which damages because of **bodily injury, personal injury, advertising injury,** or **property damage** to which this Coverage Part applies are alleged. **Suit** includes:

    1.     An arbitration proceeding alleging such damages; or

    2.     Any other alternative dispute resolution proceeding alleging such damages.

X.     **Tort liability** means a liability that would be imposed by law for injury or damage to persons or property in the absence of any contract or agreement.

Y.     **Ultimate net loss** means the total amount of damages, including any punitive or exemplary damages when not against public policy and attorney fees awarded in favor of third parties, the **Insured** is legally liable to pay because of **bodily injury, personal injury, advertising injury,** or **property damage. Ultimate net loss** shall be established after a contested **suit** or by a compromise settlement to which **we** have previously agreed in writing. **Ultimate net loss** shall be reduced by any recoveries or salvages which have been paid to or collected by **us,** but the amount of **ultimate net loss** shall not include any expenses incurred in the defense of a claim or **suit** by any **Insured,** by **us** or by any underlying insurer.

Z.     **Your product** means:

    1.     Any goods, or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        a.     **You;**

        b.     Others trading under **your** name; or

        c.     A person or organization whose business or assets **you** have acquired; and

    2.     Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes:

1.    Its design, formulation, construction or manufacture;

2.    Warranties or representations made at any time with respect to the fitness, quality, durability, or performance or **your product**; and

3.    The providing of or failure to provide warnings or instructions.

**Your product** does not include property rented to or located for the use of others but not sold.

AA.   **Your work** means:

1.    Work or operations performed by **you** or on **your** behalf; and

2.    Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes:

1.    Its design, formulation or construction;

2.    Warranties or representations made at any time with respect to the fitness, quality, durability, or performance of **your work**; and

3.    The providing of or failure to provide warnings or instructions.

# Coverage Part B
# Public Officials Liability
# Claims Made Coverage

**Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.**

Throughout this Coverage Part the words **you** and **your** refer to the **Named Insured(s)** shown on the **Declarations Page** and any other person, entity or organization qualifying as a **Named Insured** under this Coverage Part. The words **we**, **us** and **our** refer to **Genesis Insurance Company**.

The word **Insured** means any person or organization qualifying under **SECTION II - WHO IS AN INSURED**.

The words and phrases that are in bold have special meaning. Please refer to **SECTION V - DEFINITIONS** for their meaning or take note of the reference within the text.

---

## SECTION I - COVERAGE

**A.    Insuring Agreement**

1.    Subject to the applicable **Limit(s) of Insurance** of this Coverage Part, we agree to indemnify the **Insured** for **loss** in excess of the **retained limit** for which the **Insured** becomes legally obligated to pay because of **a wrongful act(s)** to which this insurance applies. **Our** indemnification obligation shall not arise until the **Insured** has paid in full the entire amount of its **retained limit**. No other obligation or liability to pay sums or perform acts or services is covered. The **Insured's** obligation to pay **loss** (other than **claim expenses**) shall have been determined by judgment against the **Insured** after a contested **claim** or by written agreement between the **Insured(s)** and the claimant(s) which has received **our** prior approval.

2.    This insurance applies to a **wrongful act(s)** only if:

a.    The **wrongful act(s)** takes place in the **coverage territory;**

b.    The **wrongful act(s)**, including all **related wrongful act(s)** takes place after the **retroactive date**, if any, shown in the **Declarations Page** and before the end of this policy period; and

c.    A **claim(s)** is first made against any **Insured**, in accordance with paragraph 3. below, during this policy period or any **Extended Reporting Period** we may provide according to **Section IV**.

3.   A **claim(s)** will be deemed to have been first made at the earlier of the following times:

    a.   When notice of such **claim(s)** is received and recorded by any **Insured** or by **us**, whichever comes first; or

    b.   When **you** become aware of a **wrongful act(s)**, situation or circumstances which may subsequently give rise to a **claim(s)** being made against any **Insured**, and **you** give written notice to **us**, in accordance with **SECTION E – DUTIES IN THE EVENT OF OCCURRENCE, WRONGFUL ACT, CLAIM OR SUIT** of the **COMMON POLICY CONDITIONS**, but not later than:

        (1)   The end of this policy period; or

        (2)   The end of any applicable **Extended Reporting Period**.

4.   All **claim(s)** based on or arising out of the same **wrongful act(s)**, or a series of **related wrongful act(s)**, by one or more **Insureds** shall be considered first made when the first of such **claim(s)** is made and shall be considered a single **claim**. Only one **retained limit** and one each **claim Limit(s) of Insurance** shall be applicable to such single **claim**.

5.   When the **Insured's** legal obligation to pay **loss** to which this insurance applies has been determined, and this amount is greater than the relevant **retained limit**, then and only then will the **Insured** be entitled to make claim for indemnity under this Coverage Part. In such case, the **Insured** shall make claim for indemnification under this Coverage Part as soon as practicable after it has paid or will pay the **retained limit**. **We** shall then indemnify the **Insured** for **loss** that exceeds this Coverage Part's **retained limit** subject to the Coverage Part's relevant **Limit(s) of Insurance** set forth in the **Declarations Page** or in any endorsement.

**B.   Defense**

**We** have no duty to defend any **claim(s)** but **we** shall have the right and **you** shall give **us** the opportunity to associate in the defense of any **claim(s)** against the **Insured** seeking damages for **wrongful act(s)**, which, in **our** sole opinion, may create indemnification obligations for **us** under this Coverage Part. In addition:

1.   The **Insured**, or the **Named Insured** on the **Insured's** behalf, has the duty to defend any **claim(s)** seeking damages to which this insurance applies and shall be responsible for paying any **claim expenses**. The **claim expenses** incurred by the **Insured** serve to erode this Coverage Part's **retained limit**.

2.   The **Insured** must obtain **our** prior written consent before offering or agreeing to pay an amount which exceeds the **retained limit** in order to settle any **claim(s)** seeking damages to which this insurance applies either in whole or in part.

3.   **We** shall also have the right, but not the duty, to assume control in the defense of any **claim(s)** which, in **our** sole opinion, may create indemnification obligations for **us**

under this Coverage Part. This assumption of control shall include, but not be limited to:

    a.    The investigation of any **wrongful act(s)** or **claim(s)**;

    b.    The selection or retention of defense counsel;

    c.    The appeal of any judgment; or

    d.    The settlement of any **claim(s)**.

If we exercise **our** rights specified in this paragraph, we shall pay the related **claim expenses**.

**C.**    **Exclusions**

This insurance does not apply to any **loss**:

1.    Based upon, or arising out of, any **wrongful act(s)** or **claim(s)** which are the subject of any notice given under any policy or policies the term of which has expired prior to the inception date of this policy.

2.    Arising out of any **wrongful act(s)** or **related wrongful acts** that takes place prior to the inception date of this Coverage Part, provided that any person referenced in paragraph 1. of SECTION E. -- **DUTIES IN THE EVENT OF OCCURRENCE, WRONGFUL ACT, CLAIM OR SUIT** of the **COMMON POLICY CONDITIONS** knew or reasonably should have foreseen that such **wrongful act(s)** or **related wrongful acts** would give rise to a **claim(s)**.

3.    Brought about or contributed to by the fraud, dishonesty or bad faith of an **Insured** or arising from the deliberate violation of any federal, state, or local statute, ordinance, rule or regulation committed by or with the knowledge and consent of the **Insured**. The actual or alleged conduct of any **Insured** shall not be imputed to any other **Insured** for the applicability of this exclusion.

4.    Arising out of or attributable to the **Insured** gaining profit, advantage, or remuneration to which the **Insured** is not entitled. The actual or alleged conduct of any **Insured** shall not be imputed to any other **Insured** for the applicability of this exclusion.

5.    Arising directly or indirectly out of any **Insured's**:

    a.    Obligations under the Employee Retirement Income Security Act of 1974 (ERISA), including any subsequent amendments or any similar federal, state or local law or regulation;

    b.    Activities in any fiduciary capacity; or

    c.    Failure to effect or maintain any insurance, bond or self-insurance fund.

6.    Arising out of any land use issue, including but not limited to, condemnation, inverse condemnation, adverse possession, dedication by, adverse use, or disputes involving the application of impact or linkage fees.  This includes but is not limited to takings and partial takings of private property resulting from the application of a land use, zoning, building, subdivision or similar ordinance or regulation.

7.    Arising out of any liability which is covered in whole or part under **Coverage Part A.**

8.    Arising directly or indirectly out of:

    a.    **Bodily injury;**

    b.    **Property damage;**

    c.    **Personal injury; or**

    d.    **Advertising injury.**

    This exclusion does not apply to **loss** arising out of any **employment wrongful act(s).**

9.    a.    Arising directly or indirectly out of or contributed to by any actual or alleged violation of:

        (1)    The Securities Act of 1933;

        (2)    The Securities Exchange Act of 1934;

        (3)    The Public Utilities Holding Act of 1935;

        (4)    The Trust Indenture Act of 1939;

        (5)    The Investment Company Act of 1940; or

        (6)    Any State Blue Sky Laws.

    b.    Based upon common law principles of liability similar to any law listed in a. above; or

    c.    Involving, directly or indirectly:

        (1)    Debt security financing, including but not limited to bonds, notes and debentures; or

        (2)    The investment of, or the failure to invest, public funds, including but not limited to the use of derivative investment instruments.

10.   a.    Which arises directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

    b.    Cost or expense arising directly or indirectly out of any:

(1) Request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **pollutants**;

(2) **Claim** by or on behalf of a governmental authority or others because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**; or

(3) **Insured's wrongful act** in complying with, enforcing or enacting any rule, ordinance, law or regulation having to do with the prevention, mitigation, monitoring, clean up, removal, containment, treatment, detoxification, neutralization, or assessment of the effects of **pollutants**.

**Pollutants** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

11. Cost or expense arising directly or indirectly out of, resulting from, caused or contributed to by electromagnetic radiation, provided that such loss, cost or expense result from or are contributed to by the hazardous properties of electromagnetic radiation. This includes any costs for the actual or threatened abatement, mitigation, or removal.

12. Cost or expense arising directly or indirectly out of, resulting from, caused by or contributed to by:

   a. The use of, sale of installation of, removal of, abatement of, distribution of, containment of, or exposure to asbestos, asbestos products, asbestos-containing material, asbestos fibers, or asbestos dust;

   b. The actual or threatened abatement, mitigation, removal or disposal of asbestos, asbestos products, asbestos-containing material, asbestos fibers, or asbestos dust;

   c. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts a. and b. above; or

   d. Any obligation of the **Insured** to indemnify any party in connection with subparagraphs a. b. or c. above.

13. Cost or expense arising directly or indirectly out of, resulting from, caused by or contributed to by:

   a. The toxic or pathological properties of lead, lead compounds or lead contained in any materials;

b.   The actual or threatened abatement, mitigation, removal or disposal of lead, lead compounds or materials containing lead;

c.   Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts a. or b. above; or

d.   Any obligation of the **Insured** to indemnify any party in connection with subparagraphs a. b. or c. above.

14.   Cost or expense arising directly or indirectly out of, resulting from, caused by or contributed to by:

a.   Any **fungus(es)** or **spore(s)**;

b.   Any solid, liquid, vapor, or gas produced by or arising out of any **fungus(es)** or **spore(s)**;

c.   Any material, product, building component, or building structure that contains, harbors, nurtures or acts as a medium for any **fungus(es)** or **spore(s)**;

d.   Any intrusion, leakage, or accumulation of water or any other liquid that contains, harbors, nurtures or acts as a medium for **fungus(es)** or **spore(s)**;

e.   The actual or threatened abatement, mitigation, removal or disposal of **fungus(es)** or **spore(s)** or any material, product, building component, or building structure that contains, harbors, nurtures or acts as a medium for any **fungus(es)** or **spore(s)**;

f.   Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with subparagraphs a., b., c., d., or e. above; or

g.   Any obligation of the **Insured** to indemnify any party in connection with subparagraphs a., b., c., d., e., or f. above.

**Fungus(es)** includes, but is not limited to, any form or type of mold, mushroom or mildew.

**Spore(s)** include any reproductive body produced by or arising out of any **fungus(es)**.

15.   Arising out of any **Insured's** law enforcement activities.  This includes, but is not limited to:

a.   **Loss** payable to or caused by any person while being apprehended, held in custody, or who has escaped from custody; and

b.   The operation of detention facilities.

This exclusion does not apply to **loss** arising out of any **employment wrongful act(s)**.

16.     Arising out of the destruction, theft, conversion, or disappearance of money, securities or the loss of use thereof.

17.     Arising directly or indirectly out of rendering or failure to render **professional services** (even if unpaid) by:

    a.     **You;**

    b.     Any **Insured;** or

    c.     Anyone else for whom **you** may be responsible.

18.     Arising out of or related to any **claim** or other proceeding:

    a.     By or on behalf of any **Insured**, whether directly or derivatively, against any other **Insured;** or

    b.     By the spouse, child, parent, brother or sister of any **Insured** for consequential injury as a result of any injury to any **Insured**.

    This exclusion does not apply to **loss** arising out of any **employment wrongful act(s)**.

19.     For which the **Insured** is liable or alleged to be liable under any contract or agreement, including any expressed or implied employment contract or any collective bargaining agreement. This exclusion does not apply to **loss** that the **Insured** would have in the absence of the contract or agreement.

20.     Arising directly or indirectly out of or related to construction, architectural, or engineering contracts or to any other contract for the purchase of goods or services.

21.     Arising directly or indirectly out of:

    a.     Any tax assessments or adjustments;

    b.     The collection, refund, disbursement or application of any taxes; or

    c.     Failure to anticipate tax revenue shortfalls.

22.     Arising out of any lockout, strike, picket line, replacement or other similar actions resulting from labor disputes or labor negotiations or any protections contained within the National Labor Relations Act.

23.     Arising out of or in connection with any **claim(s)** for any salary, wages, or other employment related benefits which the **Insured** is liable to pay any employee by operation of the:

    a.     Fair Labor Standards Act (except the Equal Pay Act);

    b.     National Labor Relations Act;

    c.     Workers Adjustment and Retaining Notification Act;

      d.      Consolidated Omnibus Budget Reconciliation Act of 1985;

      e.      Occupational Safety and Health Act; or

      f.      Other similar provisions of any federal, state or local statutory or common law or any rules or regulations promulgated under any such law.

24.      Arising out of any investigation, **claim(s)**, or other proceeding seeking relief or redress in any form other than money damages, including but not limited to, costs, fees, or expenses which the **Insured** may become obligated to pay as a result of a consent decree, settlement or adverse judgment for declaratory relief or injunctive relief.

25.      Arising directly or indirectly out of any law concerning workers compensation, unemployment insurance, social security, or disability benefits or any similar law.

26.      Arising directly or indirectly out of the failure of any investment in any **employee benefit program**, including but not limited to stocks, bonds, or mutual funds, to perform as represented by an **Insured**.

27.      Arising out of actual or alleged discrimination with respect to the **administration** of the **Insured's employee benefit program** including but not limited to discrimination based on race or national origin, religion or creed, age, sex, sexual orientation, handicap, pregnancy, physical disability, military status, or other employment practices whether or not any of the foregoing violated any federal, state or local governmental or regulation prohibiting such discrimination.

28.      Arising out of **non-employment harassment**.

## SECTION II - WHO IS AN INSURED

**A.**    **You** are an **Insured**.

**B.**    Each of the following is an **Insured** while acting within the scope of their duties as such:

1.      All persons who were, are now, or shall be **your** lawfully elected, appointed or employed officials.

2.      Current or former commissions, boards or other entities, including their current or former members, under **your** exclusive operation and jurisdiction.

3.      All of **your** current or former employees.

4.      All persons who perform a service on a volunteer basis for **you**, provided such performance is under **your** direction and control. This does not include any person working on retainer or as an independent contractor.

5.      All persons, entities, or organizations providing service to **you** under any mutual aid or similar agreement.

6.    The estate of any person in 1. through 5. above.

C.    Any entity or organization **you** newly acquire or form and over which **you** have exclusive jurisdiction, will qualify as a **Named Insured** if there is no other similar insurance available to that entity or organization. However:

    1.    Coverage under this provision is afforded only until the 90th day after **you** acquire or form the entity or organization or the end of the policy period, whichever is earlier;

    2.    Coverage does not apply to **bodily injury** or **personal injury** arising out of any **employment wrongful act(s)** committed before **you** acquired or formed the entity or organization; and

    3.    Coverage does not apply to **wrongful act(s)** that take place before **you** acquired or formed the entity or organization.

D.    No person, entity, or organization is an **Insured** with respect to any of the following boards, commissions or entities:

    1.    Schools;

    2.    Airports;

    3.    Transit authorities;

    4.    Hospitals, nursing homes, clinics or other similar health facilities;

    5.    Housing authorities;

    6.    Port authorities; or

    7.    Gas, water, electric or sewer utilities.

E.    No person, entity, or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a **Named Insured** in the **Declarations Page**.

---

## SECTION III - LIMIT(S) OF INSURANCE

A.    The **Limit(s) of Insurance** shown in Item **3.** of the **Declarations Page** and the rules below fix the most **we** will indemnify the **Insured** under this Coverage Part regardless of the number of:

    1.    **Insureds**;

    2.    **Claims** made; or

    3.    Persons or organizations making **claims**.

**B.**    1.    The each **claim Limit of Insurance** is the most we will indemnify the **Insured** for loss under **Coverage Part B** for any single **claim**.

       2.    Subject to **B. 1.** above, the **Coverage Part B Aggregate Limit of Insurance** is the most we will indemnify the **Insured** for all loss for all covered claims deemed first made during the policy period.

**C.**    The each **claim Limit of Insurance** and the **Coverage Part B** Aggregate Limit apply to loss in excess of the retained limit shown on the **Declarations Page, Item 2., Schedule of Retained Limit(s), Coverage Part B,** and will not be reduced by the retained limit.

**D.**    The **Limit(s) of Insurance** apply separately to each consecutive annual period, and to any remaining period of less than twelve (12) months, starting with the beginning of the policy period shown on the **Declarations Page,** unless the policy period is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding annual period for purposes of determining the **Limit(s) of Insurance.**

---

## SECTION IV - EXTENDED REPORTING PERIODS

**A.**    We will provide one or more **Extended Reporting Periods,** as described below, if:

       1.    This Coverage Part is canceled or not renewed; or

       2.    We renew or replace this Coverage Part with insurance that does not apply to **wrongful acts** on a claims-made basis.

**B.**    **Extended Reporting Periods** do not extend the Coverage Part period or change the scope of coverage provided. They apply only to **claim(s)** arising out of **wrongful act(s),** including all **related wrongful act(s),** that take place before the end of this Coverage Part's policy period.

       Once in effect, **Extended Reporting Periods** cannot be canceled.

**C.**    A **Basic Extended Reporting Period** is automatically provided without additional charge. This period starts with the end of this Coverage Part's policy period, and lasts for 60 days.

       The **Basic Extended Reporting Period** does not apply to claims that are covered under any subsequent insurance **you** purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

**D.**    A **Supplemental Extended Reporting Period** of 3 years duration is available, but only by an endorsement and for an extra charge. This supplemental period starts when the **Basic Extended Reporting Period** ends.

       **You** must give **us** a written request for this endorsement within 60 days after the end of the **Coverage Part B** policy period. The **Supplemental Extended Reporting Period** will not be effective unless **you** pay the additional premium in full within 15 days of the beginning of the start of the Supplemental Extended Reporting Period.

We will determine the additional premium in accordance with **our** rules and rates.  In doing so, **we** may take into account the following:

1.      The exposures insured;

2.      Previous types and amounts of insurance;

3.      The **Limit(s) of Insurance** available under this Coverage Part for future indemnification payments; and

4.      Other related factors.

The additional premium will not exceed 100% of the most recent annual premium for this Coverage Part.

This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the **Supplemental Extended Reporting Period**, including a provision to the effect that the insurance afforded for **claims** first made during such period is excess over any other valid and collectible insurance available under policies in force after the **Supplemental Extended Reporting Period** starts.

E.      **Extended Reporting Periods** do not reinstate or increase the **Limit(s) of Insurance** of this Coverage Part.

---

## SECTION V - DEFINITIONS

A.      **Administration** means:

1.      Providing information to employees, including their dependents and beneficiaries, with respect to eligibility for any **employee benefit program.**

2.      Handling of records in connection with the **employee benefit program**; or

3.      Effecting, continuing or terminating any employee participation in any benefit included in the **employee benefit program**, but this does not include the actual effecting, continuing or terminating of such **employee benefit program** which shall be deemed to be a fiduciary act

provided that all such **administration** is performed by a person authorized by the **Insured**.

However, **administration** does not include handling payroll deductions.

B.      **Advertising injury** means injury arising out of one or more of the following **offenses** committed in the course of advertising **your** goods, products or services:

1.      Electronic or other publication, transmission, dissemination or storage of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

    2.    Electronic or other publication, transmission, dissemination or storage of material that violates a person's right of privacy;

    3.    Misappropriation of advertising ideas or style of doing business; or

    4.    Infringement of copyright, title, or slogan.

C.    **Bodily injury** means bodily injury, sickness, disease, shock, fright, mental injury or anguish, emotional distress, or disability sustained by a natural person, including death resulting from any of these at any time. It also includes injury arising out of the rendering of or failure to render medical or premedical services.

D.    **Claim(s)** means an oral or written demand or notice received by an **Insured** containing an allegation of **wrongful act(s)** committed by and seeking damages against an **Insured**. **Claim(s)** shall include civil proceedings, arbitration, other alternative dispute resolutions, or other legal proceedings. **Claim(s)** shall also include a charge or complaint filed with the EEOC or its state or local equivalent containing an allegation of **employment wrongful act(s)** committed by an **Insured**. With the exception of such allegations of **employment wrongful act(s)**, **claim(s)** shall not include:

    1.    Any complaint or investigatory or enforcement action by any federal, state or local governmental agency; or

    2.    Any labor or grievance arbitration that is subject to a collective bargaining agreement.

E.    **Claim expenses** mean:

    1.    Claim investigation costs;

    2.    Legal expenses; or

    3.    Litigation costs, including but not limited to **pre- and post-judgment interest** as required by law on awards and judgments and the cost of bonds to release attachments or to appeal without any obligation to furnish such bonds;

which are reasonable in amount and can be directly allocated to the defense of an **Insured** against a specific **claim** to which this Coverage Part applies.

**Claim expenses** do not include salaries and expenses of any **Insured** (including affiliate or subsidiary organizations of any **Insured**), annual retainers, overhead, and any fees paid for claim administration.

F.    **Coverage territory** means anywhere in the world if the **Insured's** responsibility to pay damages is determined in a civil, arbitration or alternative dispute resolution proceeding brought in the United States of America (including its territories and possessions), Puerto Rico or Canada.

G.    **Employee benefit program** means:

    1.    Group life insurance, employee assistance programs, group accident or health insurance, investment plans or savings plans, profit sharing plans, pension plans and

stock subscription plans, provided that no one other than an employee of the **Insured** may subscribe to such insurance or plans; and

2.   Unemployment insurance, social security benefits, workers compensation and disability benefits.

**H.**   **Employment-related harassment** means unwelcome or offensive verbal or physical conduct, including sexual advances, requests for sexual favors, or other verbal, visual or physical conduct of a sexual nature against a prospective, present or former employee of the **Named Insured**.

**I.**   **Employment wrongful act(s)** means any actual or alleged error or misstatement or misleading statement, act or omission, neglect, negligence or breach of duty by an **Insured** provided it arises from an employment relationship with the claimant involving refusal to employ, termination of employment, wrongful demotion, wrongful failure to promote, negative evaluation, reassignment, wrongful discipline, defamation, humiliation, false arrest, false imprisonment, coercion, libel, slander, retaliation, invasion of privacy, failure to grant tenure, hostile work environment, **employment-related harassment** or discrimination.

**J.**   **Loss** means the total amount of damages, including any punitive or exemplary damages when not against public policy and attorney fees awarded in favor of third parties, the **Insured** is legally obligated to pay because of a **wrongful act(s)**. **Loss** also includes related **claim expenses**, back pay, and front pay. **Loss** shall be established after a contested **claim** or by a compromise settlement to which **we** have previously agreed in writing. **Loss** shall be reduced by any recoveries or salvages which have been paid or collected. **Loss** does not include any damages, costs, or expenses incurred by any **Insured** in making physical changes, modifications, alternations, or improvements as part of an accommodation of any disabled person pursuant to the American with Disabilities Act of 1990 or any similar federal, state or local law.

**K.**   **Non-employment harassment** means unwelcome or offensive verbal or physical conduct, including sexual advances, requests for sexual favors, or other verbal, visual or physical conduct of a sexual nature against anyone other than a prospective, present or former employee of the **Named Insured**.

**L.**   **Offense** means any of the **offenses** included in the definitions of **advertising injury** or **personal injury**.

**M.**   **Personal injury** means injury, other than **bodily injury**, arising out of one or more of the following **offenses** from the conduct of **your** operations:

1.   False arrest, detention or imprisonment;

2.   Malicious prosecution;

3.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor,

4.     Electronic or other publication, transmission, dissemination or storage of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

5.     Electronic or other publication, transmission, dissemination or storage of material that violates a person's right of privacy.

**N.**    **Pre-judgment interest** means interest added to a settlement, verdict, award or judgment based on the amount of time prior to the settlement, verdict, award or judgment whether or not made part of the settlement, verdict, award or judgment.

**O.**    **Professional services** mean any service by anyone engaged in the practice of medicine, including but not limited to, physicians, surgeons, osteopaths, chiropractors, anesthesiologists, dentists, psychiatrists, psychologists, nurses, paramedics, emergency medical technicians, first-aid attendants or pharmacists.

**P.**    **Property damage** means:

1.     Physical injury to tangible property, including all resulting loss of use of that property; or

2.     Loss of use of tangible property that has not been physically injured.

**Q.**    **Related wrongful act(s)** shall mean **wrongful act(s)** which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

**R.**    **Retained limit** means:

1.     The amount as shown in **Item 2, Coverage Part B of the Declarations Page, Schedule of Retained Limit.** This amount applies to each and every **claim(s).**

2.     The **retained limit** shall be comprised only of **loss.** The **Insured** shall be responsible for all **claim expenses** incurred without the right to indemnification in accordance with this Coverage Part's terms and conditions until the **retained limit** is exhausted as a result of **loss.**

3.     The **retained limit** shall not be impaired by any **claim(s)** or part of **claim(s)** brought against the **Insured** for coverages which are not included in the terms of this Coverage Part.

**S.**    **Wrongful act** means any actual or alleged error or misstatement or misleading statement, act or omission, neglect, negligence, or breach of duty by an **Insured** solely in the course of the **Insured's** duties for **you.** Wrongful act shall also include such acts in the administration of an **employee benefit program** and **employment wrongful act(s).**

## COMMON POLICY CONDITIONS

All **Coverage Parts** included in this policy are subject to the following:

**A.   BANKRUPTCY**

In the event of bankruptcy, insolvency, or receivership of the **Insured**, this policy shall not apply as a replacement of any relevant **retained limit(s)** and **our** relevant **Limit(s) of Insurance** will apply only in excess of the relevant **retained limit(s)** as shown in **Item 2.** of the **Declarations Page, Schedule of Retained Limits**.

**B.   CANCELLATION**

1.   The **First Named Insured** shown in the **Declarations Page** may cancel this policy by mailing or delivering to **us** advance written notice of cancellation. The **First Named Insured's** cancellation shall be binding on all other **Insureds**.

2.   If this policy has been in effect for less than 60 days, and is not a renewal of a policy **we** issued, **we** may cancel this policy for any reason by mailing by Certified mail to the **First Named Insured** written notice of cancellation at least:

a.   10 days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

b.   60 days before the effective date of cancellation if **we** cancel for any other reason.

3.   If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy **we** issued, **we** may cancel this policy only for one or more of the following reasons:

a.   Nonpayment of premium;

b.   Acts or omissions by **you** or **your** representative which materially increase the hazard insured against;

c.   Acts or omissions by **you** or **your** representative constituting fraud or material misrepresentation in the procurement of this policy, in continuation of this policy or in presenting a **claim** under this policy;

d.   Material change in the risk assumed;

e.   Breach of policy duties or conditions;

f.   Loss of reinsurance applicable to the risk insured against resulting from termination of treaty or facultative reinsurance; or

g.   Determination by the Insurance Regulator of any state that the continuation of the policy would place **us** in violation of the insurance laws or would jeopardize **our** solvency.

If we cancel this policy based on one or more of the above reasons, we will send written notice of cancellation by Certified mail to the **First Named Insured** stating the reason(s) for cancellation. We will mail this notice at least:

    a.    10 days before the effective date of cancellation if **we** cancel for nonpayment of premium.

    b.    90 days before the effective date of cancellation if **we** cancel for any other reason other than the nonpayment of premium.

4.    Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5.    If we cancel for nonpayment of premium, **you** may continue the coverage and avoid the effect of the cancellation if we receive payment in full at any time prior to the effective date of cancellation.

6.    If this policy is canceled, we will send the **First Named Insured** any premium refund due. If **we** cancel, the refund will be pro rata. If the **First Named Insured** cancels, the refund will be 90% of the pro rata refund, where allowable by law. The cancellation will be effective even if we have not made or offered a refund.

7.    If we have indemnified the **Insured** for the entire amount of the policy's Aggregate Limit(s) prior to this policy's termination date for losses other than losses arising from the **automobile hazard**, that portion of this policy's premium attributable to such coverage is fully earned.

8.    Proof of mailing will be sufficient proof of notice of cancellation.

## C.    NONRENEWAL

1.    If we elect not to renew this policy, we will mail by Certified mail to the **First Named Insured** written notice of nonrenewal at least 60 days prior to the expiration of this policy.

2.    Proof of mailing will be sufficient proof of notice of nonrenewal.

3.    If either one of the following occurs, we are not required to provide written notice of nonrenewal:

    a.    **We** or a company within the same insurance group has offered to issue a renewal policy; or

    b.    **You** have obtained replacement coverage or have agreed in writing to do so.

 Copyright, Genesis Insurance Company, 2001

**D.   CHANGES**

The policy contains all the agreements between **you** and **us** concerning the insurance afforded. The **First Named Insured** shown in the **Declarations Page** is authorized to make changes in the terms of this policy with **our** prior written consent. This policy's terms can be amended or waived only by endorsement issued by **us** and made a part of this policy.

**We** shall not be bound by any assignment of interest by any **Insured** unless **our** consent to such an assignment is endorsed into this policy.

**E.   DUTIES IN THE EVENT OF OCCURRENCE, WRONGFUL ACT, CLAIM OR SUIT**

1.   **You** shall be deemed to be aware of and have knowledge of an **occurrence** or **wrongful act(s)** as of the date that **your** legal department, risk management department, claim administrator or any of **your** elected, appointed or employed officials receives notice of such **occurrence** or **wrongful act(s)**.

2.   As a condition precedent to coverage, **you** must notify **us** as soon as practicable of an **occurrence** or **wrongful act(s)** which appears reasonably likely to involve indemnification or result in a **claim** or **suit** under this policy. Written notice should be as complete as possible, and must at least include:

   a.   How, when, and where the **occurrence** or **wrongful act(s)** took place;

   b.   The **Insured's** name and address;

   c.   The names and addresses of any persons seeking damages and/or any injured persons or witnesses; and

   d.   A description outlining the nature of any **occurrence** or **wrongful act(s)** and of any resulting injury or damage.

   Notice of an **occurrence** or **wrongful act(s)** is not notice of a **claim** or **suit**. Once an individual(s) identified in paragraph 1. of this Condition becomes aware of an **occurrence** or **wrongful act(s)** which potentially implicates this policy, those individuals and all other **Insureds** must in no way jeopardize **our** rights.

   Failure of any other of **your** agents or employees to notify **us** of any **occurrence** or **wrongful act(s)** of which the agent(s) or employee(s) has knowledge shall not by operation of this Condition invalidate the insurance afforded by this policy.

3.   If a **claim** or **suit** is received by any **Insured** which appears reasonably likely to involve indemnification by this policy, **you** must immediately record the specifics of the **claim** or **suit**, including any demands, notices, summonses, or legal papers, the date received and notify **us** as soon as practicable as a condition precedent to coverage. Notice shall be deemed given as soon as practicable if it is given to **us** by the department or person to whom **you** have delegated such responsibility as soon as practicable after they become aware of a **claim** or **suit**.

4.  When we exercise **our** right to associate in or assume control of the defense of a **claim** or **suit** as provided by the Coverage Part(s), **you** and any other **Insured** involved in such **claim** or **suit** must:

    a.  Authorize **us** to obtain records and other information;

    b.  Cooperate with **us** in the investigation, settlement or defense of the **claim** or **suit**; and

    c.  Assist **us**, upon **our** request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this policy may also apply.

5.  In any event as a condition precedent to coverage **you** must notify **us** in the manner specified above of any **occurrence**, **wrongful act(s)**, **claim**, or **suit** which:

    a.  Results in the establishment of a reserve, or would reasonably require the establishment of a reserve, for **ultimate net loss** under Coverage Part A or **loss** under Coverage Part B which equals or exceeds 33% of the relevant **retained limit**; or

    b.  Involves any of the following:

        (1)  Death;

        (2)  An amputation or loss of use of a major extremity;

        (3)  Brain damage affecting mentality or central nervous system - such as permanent disorientation, behavior disorder, personality change, seizures, motor deficit, inability to speak (aphasia), hemiplegia or unconsciousness (comatose);

        (4)  Blindness;

        (5)  Any injury to the spinal cord;

        (6)  Multiple fractures;

        (7)  Nerve damage causing paralysis and loss of sensation in arm and hand including but not limited to RSD or brachial plexus nerve damage;

        (8)  Massive internal injuries affecting body organs;

        (9)  Burns - involving over 20% of the body with third degree, or over 40% of the body with second degree;

        (10)  Rape and/or sexual molestation of any individual; or

        (11)  Class actions or putative class actions.

Copyright, Genesis Insurance Company, 2001

F.   **EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit **your** books and records as they relate to this policy at any time during the policy period and up to five years afterward.

G.   **FIRST NAMED INSURED**

**First Named Insured** means the person, entity, or organization shown in **Item 1, First Named Insured** of the **Declarations Page**. Such person, entity, or organization is authorized to act as sole agent for all **Insureds** for the procurement of coverage hereunder, the payment of premiums, the giving or receiving of notice of cancellation or nonrenewal, the receiving of unearned premium and the making of any changes in the policy.

H.   **INSPECTION AND SURVEYS**

We have the right but are not obligated to:

1.   Make inspections and surveys at any time;

2.   Give **you** reports on the conditions **we** find; and

3.   Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. **We** do not make safety inspections. **We** do not undertake to perform the duty of any person or organization to provide for the health and safety of workers or the public. And **we** do not warrant that conditions:

1.   Are safe or healthful; or

2.   Comply with laws, regulations, codes or standards.

I.   **LEGAL ACTION AGAINST US**

No person, entity, or organization has a right under this policy:

1.   To join **us** as a party or otherwise bring **us** into any **claim** or **suit**; or

2.   To sue **us** under this policy unless all of its terms have been fully complied with.

A person, entity, or organization may sue **us** to recover for an **agreed settlement,** as defined below, or for a final judgment against an **Insured** obtained after a contested **claim** or **suit,** but **we** will not be liable for **ultimate net loss** under Coverage Part A or **loss** under Coverage Part B that are not payable under the terms of this policy or that are in excess of the relevant **Limit(s) of Insurance** or within the applicable **retained limit.**

We also retain the right to challenge the terms and conditions of any settlement which is not an **agreed settlement**, including but not limited to whether an **Insured** had a legal obligation to pay damages to the claimant and whether the facts of the **claim** or **suit** underlying the settlement create any obligations under this policy. An **agreed settlement** means a settlement and release of liability signed by **us**, the **Insured** and the claimant or the claimant's legal representative.

## J.   NAMED INSURED

**Named Insured** means the persons or organizations shown in **Item 1, Named Insured(s)** of the **Declarations Page** including the **First Named Insured**.

## K.   PREMIUMS

The **First Named Insured** shown in the **Declarations Page** is responsible for the payment of all premiums.

## L.   OTHER INSURANCE

1.   All coverage under this policy is excess over any other insurance, deductible(s), retention(s) or self-insurance(s) (including **retained limit(s)** of this policy), whether written on a primary, excess, contingent or on any other basis, except for other insurance that is specifically purchased by **you** to apply in excess of this policy's relevant **Limit(s) of Insurance** set forth in the **Declarations Page** or in any endorsement. In any event, **we** will have no duty to defend any **claim** or **suit**.

2.   If any other insurance purchased by **you** or on **your** behalf is deemed to apply on the same excess basis as this policy, **our** indemnification obligation, subject to the relevant **retained limit(s)** and **Limit(s) of Insurance** of this policy, will be shared with such other insurance by the method described in paragraphs 3.and 4. below.

3.   If such other insurance permits contribution by equal shares, **we** will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid or indemnified (as the case may be) the **Insured** its relevant limit of insurance or none of the loss remains, whichever comes first.

4.   If such other insurance does not permit contribution by equal shares, **we** will indemnify by limits. Under this method, each insurer's share is based on the ratio of its relevant limit(s) of insurance to the total limits of insurance of all such insurers.

5.   **We** have no obligation to indemnify or pay any expenses incurred by such other insurer(s).

## M.   PREMIUM AUDIT

1.   **We** will compute all premium(s) for this policy in accordance with **our** rules and rates.

2.   Premium(s) for this policy shown as advance premium(s) is/are a deposit premium(s) only. At the close of each audit period, we will compute the earned premium(s) for that period. Audit premium(s) are due and payable on notice to the **First Named Insured**.

3.   The advance premium(s) stated in the **Declarations Page** is/are an estimated deposit premium(s) only and will be held until final expiration date at which time the earned premium(s) shall be computed. If the computed earned premium(s) exceed(s) the estimated advance premium(s) paid, including any interim audit adjustments, **you** shall pay the excess to **us**. If the computed earned premium(s) is/are less than the paid estimated advance premium(s), including any interim audit adjustments, **we** shall return the unearned portion to the **First Named Insured** subject to any applicable minimum premium(s) shown in the **Declarations Page**.

4.   The **First Named Insured** must keep record of the information **we** need for premium(s) computation, and send **us** copies at such times as **we** may request.

## N.   REPRESENTATIONS

By accepting this policy and as a condition precedent to coverage, **you** agree that:

1.   The information shown on the **Declarations Page** is accurate and complete;

2.   The information is based upon representations **you** made to **us** in **your** submission and/or application(s) for this policy;

3.   **We** have issued this policy in reliance upon **your** representations in the submission and/or application(s); and

4.   Except as otherwise provided in this policy or by law, this policy is void in any case of fraud or if **you** conceal or misrepresent any material facts concerning this policy, in **your** submission and/or application(s) for this policy.

## O.   SEPARATION OF INSUREDS

Except with respect to the relevant **Limit(s) of Insurance**, any applicable exclusion(s), and any rights or duties specifically assigned to the **First Named Insured**, this policy applies:

1.   As if each **Named Insured** were the only **Named Insured**; and

2.   Separately to each **Insured** against whom **claim** or **suit** is brought.

**P.**     **SUBROGATION – RECOVERY FROM OTHERS**

1.     We have the right to recover all payments which **we** have made to or on behalf of the **Insured** from anyone liable for a loss. If the **Insured** recovers from anyone liable for a loss, we shall be reimbursed first from such recovery to the extent of **our** payments to the **Insured**. The **Insured** expressly waives any rights it may have to recoup any uninsured portions of any loss prior to **our** recovery of the full amounts we paid hereunder.

2.     If the **Insured** does not commence an action or proceeding to recover damages from anyone liable for a loss paid by **us**, the **Insured** agrees to timely assign all of its rights of recovery to **us** and also agrees that we have the rights of the **Insured** to recover from anyone liable for a loss. The **Insured** will do everything necessary to protect those rights and help **us** to enforce them.

3.     Any such recovery will be allocated in the following order:

    a.     First, to reimburse any insurer for insurance coverage in excess of this policy's relevant **Limit(s) of Insurance** set forth on the **Declarations Page** or any endorsement, or to reimburse the insured to the extent there is no such insurance;

    b.     Then, **we** will be reimbursed for all of **our** payments under this policy;

    c.     Finally, any balance of the recovery which remains after **we** have been reimbursed will be paid to the **Insured**.

4.     Expenses of all proceedings to recover from anyone liable for loss covered by this policy will be deducted from any amount which has been recovered prior to the allocation in accordance with paragraph 3. above.

5.     If such action is commenced by the **Insured**, with **our** prior approval, and the expenses incurred in obtaining recoveries exceeds the amount recovered, if any, the excess expense shall be apportioned between the parties in proportion to the liability of each party for the loss before the recovery was obtained. If such an action or proceeding undertaken solely by **us** results in no recovery, we will pay all related expenses.

6.     Notwithstanding anything to the contrary in paragraphs 1. through 5. above, in the event **we** make any payment under this policy, we will waive **our** right of recovery against any person or organization with whom the **Insured** has:

    a.     A written contract that is effective and executed prior to the date of an **occurrence** or **wrongful act(s)**, if such contract requires the **Insured** to waive its subrogation, contribution, or indemnity rights; or

b.    Performed or received work under a letter of intent, work order, or other letter of understanding provided that the **Insured** can demonstrate that such letter of intent, work order, or other letter of understanding would customarily be reduced to a written contract that requires the **Insured** to waive its subrogation, contribution, or indemnity rights.

**Q.**    **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

**Your** rights and duties under this policy may not be transferred without **our** prior written consent.

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our authorized representative.

Vice President & Secretary                    Chairman, Chief Executive Officer and President

GIC-12-8J